IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY PIERCE,                                            3:15-CV-00325-AC

               Plaintiff,                             FINDINGS AND
                                                        RECOMMENDATION
v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

               Defendant.


**ACOSTA, Magistrate Judge.**

    Plaintiff Mary Pierce ("Pierce") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") in which she denied Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

1- FINDINGS AND RECOMMENDATION

Following a review of the record, the court should find the decision of the Commissioner is not supported by substantial evidence in the record . Therefore  the ALJ's decision should be reversed and remanded for further administrative proceedings.

## ADMINISTRATIVE HISTORY

Plaintiff filed her application for DIB on July 28, 2011, and alleged an amended disability onset date of November 30, 2010, due to "cervical fusion with complications, right diaphra is paralyzed, heart problems/irregular rhythm, chronic pain, depression, feel short of breath from the diaphram problems." Tr. 15, 187[1]  The application was denied initially and on reconsideration. An Administrative Law Judge ("ALJ") held a hearing on March 27, 2013. Tr. 35-68. At the hearing Plaintiff was represented by an attorney.  Plaintiff and a vocational expert ("VE") testified.

The ALJ issued a decision on June 25, 2013, in which she found Plaintiff was not disabled. Tr. 15-29. That decision became the final decision of the Commissioner on December 24, 2014, when the Appeals Council denied Plaintiff's request for review. Tr. 1-7.

On February 24, 2015, Plaintiff filed a Complaint in this court seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff  was born in 1957, and was 55 years old at the hearing before the ALJ.  Tr. 70, 39. She completed high school and some college classes. Tr. 42.  She has worked as an office manager.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674

---

[1]  Citations to the official transcript of record filed by the Commissioner on July 24, 2015, are referred to as "Tr."

F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

3- FINDINGS AND RECOMMENDATION

## DISABILITY EVALUATION

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 ("Listed Impairments").

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*,

648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her November 30, 2010, amended alleged onset date. Tr. 17. Her date last insured is December 31, 2015. Tr. 15.

At Step Two the ALJ found Plaintiff has severe impairments of degenerative disc disease of the lumbar, thoracic, and cervical spine and disc herniation status post surgery, seizure disorder, and right hemidiaphragm paralysis. Tr. 17.

At Step Three the ALJ determined Plaintiff's impairments did not equal in severity a listed impairment, and found Plaintiff retained the RFC to perform sedentary work with only occasional overhead reaching with the right arm. Tr. 23. She can not work around dangerous machinery or at unprotected heights. *Id.*

At Step Four, the ALJ found Plaintiff was able to perform her past relevant work as an office manager . Tr. 29. The ALJ concluded that Plaintiff was not disabled.

## THE MEDICAL EVIDENCE AND TESTIMONY

### I. The Medical Record

The parties are familiar with the extensive medical record.  It will be set out below as relevant.

### II. Testimony at March 27, 2013 Hearing

Plaintiff had surgery in November 2009.  Tr. 38.  She continued to work after her surgery part-time, about 20 hours a week,  until she was laid off in November 2010.  She last worked as an office manager at a construction company, doing accounting functions, the payroll, human resources, and taxes. Tr. 42.  She worked at the company for 11 years.  Plaintiff has prior work in accounting.

Plaintiff was laid off because the company was not doing well and the owner was trying to reduce expenses.  Tr. 43.  She was not a dependable employee.  After she was laid off Plaintiff received unemployment benefits and sought work in accounting.  She made four or five applications per week, some of which were for full-time work and some of which were for part-time work.  Tr. 45.  Plaintiff received unemployment benefits for almost two years, though she testified she "would not be able to work a regular job like I used to do."  Plaintiff said she is not physically capable of holding a regular job.  Tr. 45.  Plaintiff testified that she  has a strong work ethic so she "was willing to try for a job and see if I could do it."  Tr. 46.  She received unemployment insurance benefits through June 2012, and took classes on resume writing and interview skills.

Plaintiff lives in a house with the bedroom upstairs and the bathroom in the basement.  Tr. 47-48.  When she goes down the stairs "quite often my heart just really races and I get very flushed and lightheaded and I have to just rest until my heart rate goes back down." Tr. 48.  Plaintiff quit a position on her church administrative council after 15 years because she could not commit to the

monthly meetings. She "didn't know what my health would be like if I could attend or not." *Id.* She has trouble breathing because of a paralyzed diaphram, and can no longer sing or yell. She has tremors in both hands since 2009 that make it difficult to use a keyboard or a telephone. Plaintiff used to walk with a group for two miles before work, but can no longer keep up with the group. Tr. 49. In July 2011 Plaintiff was walking seven miles a day, but she has become weaker over time and can no longer walk that far. Tr. 50.

Plaintiff has a history of seizures since childhood, and she was told in October 2012 not to drive until she has been seizure free for six months. In March 2012 she was able to walk two miles four days a week. Tr. 54. For the past year Plaintiff takes morphine for chronic pain, as well as percocet. For transportation she gets rides with friends. In the past year she is unable to do art projects because her hands tremble. She does laundry and cooking, but her husband puts laundry away and cleans the kitchen. She does about one half hour of yard work at a time. She reads and rarely uses a computer. Tr. 58. Her memory is poor and she repeats herself. Plaintiff is "extremely fatigued a lot where I can sleep a lot, like for a couple of days. And that usually is a couple of times a month." Tr. 60. She has poor endurance. Her pain is in her neck and upper back, and has been at the same level since her surgery in 2009. Her surgeon suggested more surgery but she declined because the last surgery did not go well.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) finding Plaintiff less than fully credible; (2) failing to credit the opinion of the treating physician; and (3) rejecting lay witness testimony.

### I. Credibility

The Ninth Circuit has developed a two-step process for evaluating the credibility of a

claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen,* 80 F.3d at 1282.

Second, "if the claimant meets the first test, and there is no evidence of malingering, "' the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication, the

8- FINDINGS AND RECOMMENDATION

individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen,* 80 F.3d at 1284.

The ALJ found Plaintiff not fully credible, stating "her statements concerning her incapacity are not borne out by the objective evidence or by the consistency of her own reported and demonstrated functional ability." Tr. 24.

## A.  The Objective Evidence Supports Plaintiff's Pain Complaints

The objective evidence includes a February 2010 cervical MRI which showed post-operative changes at C3-4 and C4-5 with no evidence of nerve root or disc herniation or impinging osteophyte at either level. Tr. 334. At T1-2 there was a large lateral disc herniation/osteophyte complex that impinged on the right side of the spinal cord with severe impingement of the right T2 nerve root. Lumbar MRI scan showed a disc osteophyte complex at L4-5 with moderate facet hypertrophy and an associated L4-5 annular tear causing flattening of the thecal sac and bilateral neural foraminal narrowing at L4-5. At L5-S1 there was a moderate broad-based disc osteophyte complex causing moderate bilateral neural foraminal narrowing at L5-S1 with impingement of the exiting L5 nerve roots at L5-S1 and the L4 and L5 nerve roots at L4-5. *Id.* Plaintiff had bilateral chest numbness, and right T2 radiculopathy with pain, numbness, and paresthesias in the right arm.

9- FINDINGS AND RECOMMENDATION

In May 2010 Plaintiff was seen by Wayne Strauss, M. D., Ph.D., a pulmonologist. Tr. 940-42. Dr. Strauss reviewed chest x-rays from 2006 and 2007, a January 2010 CT abdominal scan, chest x-rays from January 2010, and fluroscopy loops from a January 2010 sniff test. Tr. 941. Dr. Strauss concluded Plaintiff had "new paretic right hemidiaphragm most likely associated with her recent cervical spine surgery" with exertional dyspnea and activity limitation. *Id.*

On this record, inconsistency with the objective medical evidence is not a clear or convincing reason to find Plaintiff less than fully credible.

**B. Plaintiff's Reported Complaints and Functions Are Consistent With Her Testimony**

The ALJ cites multiple chart notes in which Plaintiff reported her medications reduced or relieved her pain. Tr. 25. However, the ALJ fails to cite numerous instances where Plaintiff reported inadequately controlled pain. The ALJ also found Plaintiff's credibility undermined by her ability to remain active. Tr. 26.

In January 2011 Plaintiff reported increased pain with increased activity as she cared for her husband after his bypass surgery. Tr. 535. Plaintiff had more pain in general and in the left shoulder, with decreased range of motion. Dr. Carroll diagnosed left rotator cuff tendinitis and injected the shoulder with Kenalog and Marcaine. Tr. 536. In May 2011 Plaintiff reported increased pain in her knees and hands. Tr. 534. In July Plaintiff reported fatigue and she did not feel "mentally sharp," and Dr. Carroll noted "probable medication side effects," and recommended tapering Soma. Tr. 528, 525.

On September 1, 2011, Plaintiff completed an Adult Function Report in which she reported trouble sleeping, fatigue, and pain. Tr. 199-207. She had to rest when her blood pressure spiked. She did household chores and worked in the garden for ten to 15 minutes. Tr. 200. She prepared

simple meals three - to - four times a week, did light house work for one to two hours, shopped once a week for an hour, could lift ten pounds, went to church, and could walk about ten blocks before resting for five minutes. 201-02. She could pay attention for 15 - to - 30 minutes, and did not finish what she started. Her medications, including oxycodone, morphine, and soma caused fatigue.

Plaintiff began treatment at the chronic pain clinic on September 14, 2011. Tr. 1088-93. Thomas Schrattenholzer, M.D. noted medication side effects included fatigue, nausea, and confusion. Tr. 1089. Plaintiff was short of breath, and was positive for myalgias, back pain, joint swelling, arthralgias, and gait problems. Tr. 1089-90. Plaintiff had tremors, weakness, numbness and headaches. Tr. 1090. She had sleep disturbance, dysphoric mood, and decreased concentration. *Id.* The following day Dr. Carroll noted Plaintiff went to the pain clinic because her pain was "not very well controlled. She continues the MS Contin 15 mg b.i.d. and takes 4-5 mg oxycodone tabas a day. Even with that, she often has days where she has such neck, upper back and arm pain that she can even feel sick to her stomach." Tr. 599. Dr. Carroll noted increased bilateral shoulder aching that seemed to occur when he switched her from Lipitor to simvastatin. Dr. Carroll had Plaintiff stop the simvastatin.

In November 2011 Plaintiff reported to the pain clinic increased pain with window washing, gardening, and vacuuming, but increased mental clarity. Tr. 1052, 1041. In November she was laid off from her part-time job. Tr. 43. Plaintiff applied for and received unemployment benefits through June 2012. Tr. 26. She was "much improved" in December on Suboxone, but had "constant" pain in March, made worse by "sitting, lifting her arms above her shoulders, and walking." Tr. 597, 1010, 1012. Dr. Carroll noted dypsnea, and although Plaintiff was walking two miles four days a week, she felt unable to take a deep breath. Tr. 846. Suboxone was "terribly

sedating," and Plaintiff slept 12 - to - 14 hours a night with excessive daytime sleepiness, and rated her pain at six or seven on a ten - point scale. Tr. 847.    By July 2012 Plaintiff stopped taking Suboxone as she could not afford it, and asked Dr. Carroll to represcribe MS Contin. Tr. 834.  She reported "continuous pain although the medication helps.  On most days she has reasonable relief but she still has some days it is just terrible-with bad neck pain."  Tr. 835.  Dr. Carroll prescribed naproxin for hip bursitis.  Plaintiff reported the return of epileptic seizures previously controlled on Depakote.  She had decreased walking due to pain.  Tr. 836.

Plaintiff continued to report inadequate pain control in August 2012.  Tr. 820.  She had aching pain in her hips, and additional seizures.  Tr. 811.  In September Plaintiff had episodic chest pain and palpitations with exertion, and bilateral hip pain worse with prolonged walking.  Tr. 770. Dr. Carroll told her to avoid "any strenuous physical activity" and "prolonged walking."  Tr. 771. In November Dr. Carroll noted Plaintiff increased her oxycodone with increased activity, and she reported episodes of tachycardia. Tr. 723.  Dr. Carroll noted "chronic pain after failed neck surgery." Tr. 724.

On January 7, 2013, Plaintiff was seen in the emergency room with altered mental status arising from a seizure disorder.   Tr. 924-25.  The following week Dr. Carroll noted increased depression, and on February 7 Plaintiff was treated in the emergency room for Depakote toxicity, with confusion and somnolence. Tr. 697, 610.  On March 15, 2013, treating neurologist Christopher J. Ginocchio, M.D., found Plaintiff's epilepsy controlled on Keppra.  Tr. 945.

The hearing before the ALJ occurred on March 27, 2013.  Tr.  35-69.  In April and May Plaintiff saw Dr. Carroll three times for severe right hip pain unrelieved by injections. Tr. 1288-90. In mid-June Dr. Carroll noted Plaintiff was "not doing well at all."  Tr. 1292.  The ALJ's decision

12- FINDINGS AND RECOMMENDATION

was issued on June 25. On July 4 Dr. Carroll noted MRIs revealed extensive osteonecrosis of both hips. Tr. 1293, 1270. Orthopaedic surgeon D. Christopher Hikes, M.D., examined Plaintiff and reviewed imaging studies and concluded Plaintiff had "[d]ebilitating painful avascular necrosis of the left hip. The size of this lesion is not amenable to core decompression and the patient is quite disabled with this." Tr. 1273. Plaintiff had a hip replacement on July 29, 2013. Tr. 1275. The Appeals Council denied Plaintiff's request for review on December 24, 2014. Tr. 1-4.

One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant's activities of daily living may discredit his testimony about symptoms only when either (1) the activities "meet the threshold for transferable work skills" or (2) the activities contradict his testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff's activities do not contradict her testimony, nor do they meet the threshold for transferable work skills.

On this record, Plaintiff's symptom reports and activities do not constitute a clear and convincing reason to find her less than fully credible. The ALJ's credibility determination should be found not supported by substantial evidence.

## II. The Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ should also give greater

weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n.2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff contends the ALJ erred in rejecting Dr. Carroll's opinion. Dr. Carroll has been Plaintiff's treating physician since September 2004. Tr. 1207. Dr. Carroll completed a Physical Residual Functional Capacity Report (PRFCP) in February 2013. Tr. 921-22. He opined that Plaintiff could lift and /or carry less than ten pounds occasionally and could not lift or carry any weight frequently. He found Plaintiff could stand and/or walk for less than two hours and sit for about six hours in an eight-hour workday with normal breaks. Dr. Carroll found Plaintiff had limitations pushing and/or pulling with the upper extremities. He opined that Plaintiff could occasionally balance, stoop, and kneel. Plaintiff could never crouch, crawl, or climb ramps, stairs, ladders, ropes or scaffolds. He found Plaintiff could only occasionally perform the manipulative activities of reaching in all directions, handling or fingering, concluding that Plaintiff had experienced such limitations since November 2009 and that they are permanent. *Id.* Dr. Carroll said Plaintiff should avoid frequent exposure to extreme cold, extreme heat, wetness, humidity, noise,

14- FINDINGS AND RECOMMENDATION

vibration, fumes, odors, dusts, gases, poor ventilation, and hazards.

Dr. Ginocchio found similar limitations in a January 2013 PRFCP. Tr. 606-07. Dr. Ginocchio opined that Plaintiff could lift and/or carry less than ten pounds occasionally and frequently. He said Plaintiff could stand and/or walk for less than two hours in an eight-hour workday and needed to periodically alternate between sitting and standing to relieve pain and discomfort. Dr. Ginocchio stated that Plaintiff had limitations pushing and/or pulling with the upper and lower extremities. Plaintiff should never balance or climb ramps, stairs, ladders, ropes or scaffolds. Dr. Ginocchio opined that Plaintiff could occasionally stoop, kneel, crouch and crawl. Plaintiff could only occasionally perform reaching in all directions or fingering, and could never perform overhead handling. Plaintiff should avoid exposure to extreme cold, wetness, fumes, odors, gases, poor ventilation, and hazards. The limitations arose out of seizures and cervical disc joint disease and were expected to be permanent.

The ALJ noted both opinions and gave them "little weight." Tr. 27-28. The ALJ said Dr. Carroll did not cite objective findings or provide a significant rationale in support of the limitations. Tr. 28. As set out above, there are multiple objective findings of severe impairments including multi-level spine issues, a pararetic right hemidiaphram with dypsnea on exertion, a seizure disorder, and bilateral osteonecrosis of the hips, although the documentation regarding Plaintiff's hip impairments was not before the ALJ.

Dr. Carroll treated Plaintiff for more than nine years with at least 50 face-to-face examinations. His records contain detailed reports of Plaintiff's complaints as well as clinical observations. Tr. 590 ("She has no tremor at this time in her hands."), 579 ("She looks tired and did get tearful."), 571 ("She is hoarse . . . tired appearing . . . I walked her around the office at a regular

pace - her 02 sat remained [normal] 96-97% but her [heart rate] rose to 130 . . . dypsnea on exertion."), Tr. 1144 ("The right hand shows some livedo changes in her right thumb . . . . She is mildly hoarse."), Tr. 567 ("There is mottling over the thumb and the radial aspect and tip of the index finger. She has an intact radial pulse - but it seems weaker than on the left."), Tr. 1134 ("She has edema to her knees [bilaterally]."), Tr. 1108 ("She looks tired and slightly pale."), Tr. 1288 ("She looks to be in pain.") Tr. 1293 ("She is anxious.").   Considering the entire medical record, Dr. Carroll's opinion is supported by objective signs and clinical findings.

The Commissioner argues that the ALJ reasonably found Plaintiff's neck and upper right extremity symptoms improved following her neck surgery, and cites a January 2010 "essentially negative" MRI of the neck. Tr. 307. The ALJ failed to consider the February 2010 MRI which indicated a "mild broad-based disc bulge or disc osteophyte complex with moderate articular facet degeneration at L4-5 and L5-S1 resulting in flattening of the ventral thecal sac with mild bilateral neural foraminal narrowing" and a small central annular tear at L4-5. Tr. 355. As set out above, the medical records indicate some waxing and waning of Plaintiff's symptoms but do not support the ALJ's conclusion that Plaintiff's symptoms improved after her 2009 cervical fusion.

The Commissioner contends the ALJ reasonably found Dr. Carroll's failure to explain the objective findings that support his PRFCP conclusions undermined the reliability of his opinion. On the PFCCP form under "diagnosis" Dr. Carroll wrote "chronic pain after cervical fusion." Tr. 922. It is not reasonable to expect a treating physician to detail the objective and clinical findings supporting an opinion where, as here, the ALJ had access to the physician's entire treatment record.

The ALJ noted a disparity between Dr. Carroll's assessment of manipulative limitations and the lack of objective findings to support this assessment, with the exception of restrictions on

16- FINDINGS AND RECOMMENDATION

reaching overhead on the right. Tr. 28. The Commissioner notes Plaintiff denied limitations in "using hands" in her September 2011 application. Tr. 204. The Commissioner cites medical records in which Plaintiff's grip strength was normal and fine motor movements were intact. However, normal grip strength and fine motor control are not necessarily inconsistent with manipulative limitations, especially where, as here, manipulative limitations arise from chronic pain resulting from cervical surgery.

The ALJ found Dr. Carroll's assessment inconsistent with Plaintiff's claimed abilities, noting Plaintiff reported an ability to lift up to ten pounds. Tr. 28,202. Dr. Carroll opined Plaintiff was limited to lifting less than ten pounds occasionally. To the extent this is an inconsistency, it does not amount to a specific or legitimate reason to reject Dr. Carroll's opinion. The ALJ noted an inconsistency between Dr. Carroll's opinion and Plaintiff's reports of walking for exercise. Considering the whole medical record, Plaintiff's reports of walking vary but decrease over time to the point where Dr. Carroll advised her to avoid prolonged walking in September 2012. Tr. 771.

On this record, the ALJ's rejection of the treating physician's opinion should be found not supported by specific, legitimate clear or convincing reasons, and not supported by substantial evidence.

## III. Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons

17- FINDINGS AND RECOMMENDATION

germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.

1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*,

236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant

properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

## A. David Pierce

Mr. Pierce is Plaintiff's husband. He completed an Adult Function Report in September

2011. Tr. 207-14. Mr. Pierce said Plaintiff had conditions limiting her ability to work including

insomnia, constant fatigue, chronic pain (neck, back and legs), rapid pulse, high blood pressure,

memory loss, and breathing problems. He reported Plaintiff "only has the energy to prepare simple

meals" three to four times a week. Tr. 209. At his encouragement, she did some light dusting and

sweeping for about one to two hours once a week. Mr. Pierce reported Plaintiff cannot do much yard

or house work because she becomes short of breath. She grocery shops once a week for an hour "but

cannot lift much." Tr. 210. Plaintiff gardened for ten to fifteen minutes at a time because of pain

and shortness of breath. She went to church and book club, but required reminders. Tr. 211. Her

ability to socialize was limited because she was often ill and in pain.

Mr. Pierce said Plaintiff was limited in lifting, bending, reaching, walking, talking, stair

climbing, memory, completing tasks, concentration, understanding, and following instructions. Tr.

212. She could lift no more than ten pounds, could not bend over all the way, had pain with

reaching, and limited endurance for walking and stair climbing. Plaintiff speech was sometimes

slurred, she had short term memory loss and trouble completing tasks with poor concentration. Mr.

Pierce said she could walk five blocks before requiring five minutes rest. Her medications caused

her to be tired and listless with memory loss. Tr. 213.

18- FINDINGS AND RECOMMENDATION

The ALJ gave Mr. Pierce's function report "little weight," noting Plaintiff reported in her September 2011 function report that she could walk ten blocks, instead of five, before needing to rest. Tr. 28. The ALJ noted Plaintiff's July 2011 report of walking seven miles a day. Tr. 28, 528. Finally, the ALJ noted Mr. Pierce reported Plaintiff had problems with written instruction at times, but Plaintiff did not assert that limitation. Arguably, the ALJ identified germane reasons to discount Mr. Pierce's observations regarding Plaintiff's ability to walk. The ALJ did not, however, identify any germane reason to discount the balance of Mr. Pierce's report, which is consistent with the reports from the treating physician and the Plaintiff. On this record, the ALJ's assignment of "little weight" to Mr. Pierce's opinion is not supported by germane reasons and should be found not supported by substantial evidence.

## B. Michael Mather

On February 22, 2013, Michael Mather, Plaintiff's former employer, submitted a written statement in which he stated Plaintiff worked for him since 1999 as the office manager and bookkeeper in a three - employee office. Tr. 249. Mr. Mather said Plaintiff was self - motivated and required little supervision. "Because of this she was given flexibility on her days and hours of work which was required due to her medical conditions, there were many times she came to work when she should have been under a doctor's care and on several occasions we would drive her and her car home." *Id.* Mr. Mather said Plaintiff's health issues deteriorated after her last surgery and there were "times she appeared to be in so much pain I couldn't believe she was at work. . . ." Tr. 249. During the 2010 recession Mr. Mather was forced to eliminate her position. He opined that Plaintiff's medical problems would make it "next to impossible for her to maintain a regular 9 to 5 job although knowing her she would try. *Id.*

The ALJ gave Mr. Mather's statement "little weight," noting Plaintiff continued working for a year after the November 2009 surgery, and she was laid - off for economic reasons rather than an inability to do the job, concluding "the evidence shows the claimant's pain medications are effective in managing her pain." Tr. 28.

Plaintiff's ability to work, part-time, after her surgery, with difficulty, is not evidence that she could perform substantial gainful activity after her November 2010 alleged onset date. As set out above, substantial evidence does not support the ALJ's conclusion that Plaintiff's medications were effective in managing her pain. The ALJ's rejection of Mr. Mather's statement is not supported by germane reasons and should be found not supported by substantial evidence.

## RECOMMENDATION

The ALJ's rejection of plaintiff's testimony, the treating physician's opinion, and lay testimony should be found erroneous for the reasons set out above. Because the ALJ found at Step Four that Plaintiff is capable of performing her past relevant work as an office manager, there is no evidence as to whether plaintiff has the ability to perform other work in the national economy. Therefore, outstanding issues must be resolved before a determination of disability can be made.

Accordingly, this matter should be remanded pursuant to Sentence 4 of 42 U.S.C. § 405(g) for further proceedings in accordance with this Findings and Recommendation.

/ / /

/ / /

/ / /

/ / /

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no Objections are filed, review of the Findings and Recommendation will go under advisement on that date. If Objections are filed, a response to the objections is due fourteen (14) days after being served with a copy of the Objections, and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 6th day of September, 2016.

John V. Acosta
United States Magistrate Judge

21- FINDINGS AND RECOMMENDATION